**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| MIKE OAKLEAF, individually and on behalf of others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION |
| v. | ) ) | No. 24-2493-KHV |
| SOUTHWEST JANITORIAL SERVICE LLC, | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM AND ORDER**

On October 30, 2024, Mike Oakleaf, individually and on behalf of others similarly situated, filed his complaint against Southwest Janitorial Service LLC ("Southwest"), alleging that defendant failed to pay him overtime. Complaint (Doc. #1). Plaintiff sued under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. This matter is before the Court on Plaintiff's Unopposed Motion For Order For Conditional Certification And Preliminary Approval Of Settlement Agreement (Doc. #37), filed June 22, 2026. For reasons stated below, the Court sustains plaintiff's request for conditional certification but overrules plaintiff's request for preliminarily approval of the proposed settlement.

**Factual and Procedural Background**

Southwest provides cleaning services for commercial businesses and government entities. From March until June of 2024, Oakleaf provided cleaning services for Southwest. Southwest classified him and similar workers as independent contractors and paid them straight salaries without overtime compensation.

Oakleaf and the putative collective of workers shared a common work experience. They

had the same or similar blue collar job duties performing cleaning and janitorial work. Southwest required Oakleaf and members of the putative class to follow the same policies and procedures related to job duties. For example, they all signed the same Independent Contractor Agreement and Non-Solicitation/Non-Compete/Confidentiality Agreements. Southwest required these workers to follow the same time-tracking procedures, assigned work locations and set work schedules. Southwest maintained similar control over their work. Southwest did not require them to have unique skills, degrees or experience. They performed job functions that were not unique or specialized, but were mainly manual in nature. They did not have independent judgment or discretion to deviate from what Southwest directed. These workers could not contract directly with Southwest's clients and were not financially responsible for any losses. Southwest ordered the hours and locations which Oakleaf worked, tools used and rate of pay.

On October 31, 2024, Oakleaf filed suit against Southwest, alleging that it misclassified him and similarly situated workers as independent contractors and failed to pay overtime as the FLSA required. The parties did not agree on the issue of conditional certification, so they served initial disclosures and discovery materials. With this information, Oakleaf's counsel performed a damage analysis for all putative collective members. It showed that under Oakleaf's most likely theory of the case, the putative collective's unpaid wages totaled $893,092.45 on a three-year basis, and $611,257.36 on a two-year basis. On May 12, 2025, the parties engaged in mediation, which failed because Southwest argued that it could not pay such a large amount. Southwest provided evidence of its financial situation through profit and loss sheets, balance statements, bank records and bank references. Based on this production, the parties negotiated a settlement that Southwest represented was the most it could afford, and that plaintiff believes is reasonable.

On November 21, 2025, Oakleaf filed his Unopposed Motion For Order To Approve

Settlement Agreement (Doc. #27), which the Court overruled as premature, since putative class members had not received notice of the lawsuit and an opportunity to opt in. To address this deficiency, the parties adjusted the settlement to accommodate preliminary approval, a pre-final approval conditional certification and challenge procedure and a motion for final approval. They then filed this motion for conditional certification and preliminary approval of settlement agreement.

The settlement agreement requires Southwest to pay $250,000 into a settlement fund administered by an independent settlement administrator, which will be used to pay settlement awards, a representative plaintiff's service award, collective counsel fees and expenses and the cost of the settlement administrator. Counsel fees amount to 40 per cent of the settlement fund ($100,000) and plaintiff's counsel will be reimbursed for expenses up to $2,034.14. Administrative expenses for disbursement of the net settlement fund are capped at $4,194.06, based on 94 putative collective members. The proposed service award is $8,000. Collective members will recieve proportional amounts of the remainder, based on the time and pay which each collective member worked for Southwest during the period at issue.

Once the number of collective members is finalized, any reduction in administration cost due to fewer opt-ins will be returned to the net settlement amount to be distributed to collective members. Once the settlement is preliminarily approved, Oakleaf's counsel or a third-party administrator will administer the notice and consent process. Putative collective members will have 45 days to opt in. A putative collective member may request additional information or challenge his or her pro rata distribution from the settlement. The notice will contain a minimum settlement amount, conservatively based upon the full withholding. The putative collective member will have 30 days after the opt-in period closes to resolve any questions or challenges to

the pro rata distribution.  If these are not resolved to his or her satisfaction, a collective member may withdraw consent, without prejudice.

Plaintiff asks the Court to (1) conditionally certify the proposed settlement class for settlement purposes only; (2) grant preliminary approval of the proposed settlement; and (3) direct that notice be disseminated to putative class members.

Plaintiff's counsel has recorded a combined total of 162.7 hours on this matter since late 2024.  Declaration of Matthew Parmet (Doc. #37-9) filed June 22, 2026, ¶ 61.  Matthew Parmet bills at a rate of $550 per hour.  Id., ¶ 51.  Parmet has litigated hundreds of wage and hour actions, and has been a plaintiff's attorney since 2010.  Id., ¶ 4.  Justin Vineyard is an attorney at Parmet Law PC, bills at a rate of $275 and has practiced law since November of 2024.  Rowdy Meeks has practiced law since 1997.  Id., ¶ 54.  Michael Lore and Stacy Babaz have practiced law since 1993.  Id., ¶ 55.  Plaintiff's counsel did not bill for paralegal or law clerk time.  Plaintiff's counsel anticipates at least another 40 hours of billable time to finalize this matter.

## Analysis

Plaintiff asks the Court to (1) conditionally certify the proposed settlement classes under the FLSA; (2) grant preliminary approval of the proposed settlement; and (3) direct that notice be disseminated to putative class members.

## I.    Collective Action – FLSA Claims

Plaintiff asserts that the Court should approve the proposed settlement of the FLSA collective action claims.  Under the FLSA, on behalf of themselves and "similarly situated" employees, a plaintiff can bring a collection action against his or her employer for unpaid wages or unpaid overtime.  Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 69 (2013) (quoting 29 U.S.C. § 216(b)).  An FLSA lawsuit does not become a collective action unless other plaintiffs opt

in by giving written consent.  Christeson v. Amazon.com.ksdc, LLC, No. 18-2043-KHV, 2019 WL 354956, at *3 (D. Kan. Jan. 29, 2019).  Accordingly, a named plaintiff cannot settle claims on behalf of putative class members who have not opted in.  Id. at *4.  Therefore, when putative class members have not received notice of the lawsuit and an opportunity to opt in, the named plaintiff cannot seek final settlement approval.  Id.  Instead, plaintiff may ask the Court to (1) conditionally certify the proposed class settlement, (2) preliminarily approve the proposed settlement and (3) approve the proposed notice to putative class members.  Id. at *5.  If the Court does so, it will order the parties to send an approved notice to putative class members, and it will establish a period during which putative class members may opt in.  Id.  When the opt-in period expires, the named plaintiff may file a motion for final collective action certification and final settlement approval. Id.

Here, members of the putative collective action class have not received notice of the lawsuit or an opportunity to opt in.  Accordingly, plaintiff ask the Court to (1) conditionally certify the proposed class settlement, (2) preliminarily approve the proposed settlement and (3) approve the proposed notice to putative class members.

### A.    Conditional FLSA Collective Action Certification

The FLSA provides that an employee may bring a collective action on behalf of other employees who are "similarly situated."  29 U.S.C. § 216(b).  The Court uses a two-step approach when determining whether plaintiffs are "similarly situated" under Section 216(b) of the FLSA. Thiessen v. GE Capital Corp., 267 F.3d 1095, 1105 (10th Cir. 2001).  The Court typically makes an initial "notice stage" determination whether plaintiffs are "similarly situated."  Id. at 1102.  That is, the Court makes a conditional determination whether a collective action should be certified for purposes of sending notice of the action to potential class members.  See Brown v. Money Tree

Mortg., Inc., 222 F.R.D. 676, 679 (D. Kan. Aug. 23, 2004).  At the notice stage, the Court requires "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan."  Thiessen, 267 F.3d at 1102 (quotations omitted). This standard is a lenient one that typically results in class certification.  See id.  At the end of discovery, the Court revisits the certification issue and makes a second determination using a stricter standard of "similarly situated."  Id.

In the proposed settlement agreement, the putative collective class members are defined as "all persons working for Southwest Janitorial Service LLC and classified as independent contractors, at any point from October 30, 2021, through November 20, 2025."  Settlement Agreement (Doc. #37-1), § 8.h.  Plaintiff sufficiently alleges that together, the members were victims of defendant's policy, plan or practice to deprive them of overtime compensation for hours worked in excess of 40 each work week.  Thiessen, 267 F.3d at 1102.  The Court therefore conditionally certifies the class.

### B.    Preliminary Approval Of The Proposed Settlement

Under the FLSA, parties must present a proposed settlement to the Court, which determines whether the settlement is fair and reasonable.  Elston v. Horizon Global Americas, Inc., No. 19-2070-KHV, 2020 WL 6318660, at *4 (D. Kan. Oct. 28, 2020).  To approve the settlement, the Court must find that (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties and (3) the proposed settlement contains an award of reasonable attorney fees.  Id.  The Court must also determine whether plaintiff's service award is fair and reasonable.  Id.  If the settlement agreement satisfies these requirements, the Court may approve it to promote the policy of encouraging settlement.  Id.

### 1.    Bona Fide Dispute

Plaintiff asserts that the parties have a bona fide dispute whether defendant owes overtime pay for work which he and putative class members performed in excess of 40 hours in a work week.  When parties request approval of an FLSA settlement, they must provide sufficient information to determine whether a bona fide dispute exists.  Id.  To satisfy this burden, the parties must describe: (1) the nature of the dispute; (2) the employer's business and the type of work that the employees perform; (3) the employer's reasons for disputing the employees' right to the wages or overtime; (4) the employees' justification for the disputed wages; and (5) if the parties dispute the computation of wages owed, each party's estimate of the number of hours worked and the applicable wage.  Id.

Plaintiff has established a bona fide dispute.  Plaintiff disputes whether defendant misclassified the collective class members as independent contractors instead of employees, which would entitle them to overtime pay.  The collective class members received salaries and did not have to clock in or out.  Southwest used a geolocation program on Oakleaf's phone, however, and the phones of some collective class members.  Oakleaf used this program data to show that he was at the worksite on average 9.3 hours per day.  Plaintiff extrapolated this figure to the putative collective class, which produced an expected total of 66.24 hours per week (22.24 overtime hours per week) per class member.  Oakleaf calculated that unpaid wages for the collective, on a fluctuating workweek basis, total $611,257.36 in years one and two, and $281,835.09 in year three, for a total of $893,092.45.  Oakleaf and the collective would have sought this amount as liquidated damages.

Southwest intended to dispute this calculation, arguing that not all time on site was compensable.  It insisted that plaintiff and collective class members were properly classified as

independent contractors and that it did not owe them overtime under the FLSA. Further, Southwest intended to argue that even if plaintiff and the collective class members were employees, their job duties and responsibilities allowed Southwest to classify them as salaried employees exempt from FLSA overtime requirements. Had Southwest prevailed on either of these defenses, Oakleaf and members of the collective would have received no recovery.

Based on this record, the Court finds that the parties have a bona fide dispute.

### 2. Fair And Equitable

To determine whether the proposed settlement is fair and equitable, the Court considers several factors, including: (1) whether the parties fairly and honestly negotiated the proposed settlement; (2) whether serious questions of law and fact place the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable. See Rutter & Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1188 (10th Cir. 2002); see also Rule 23(e), Fed. R. Civ. P. These factors are not determinative; the Court must also consider factors that are relevant to the history and policy of the FLSA, such as whether the proposed agreement contains overly broad releases or restrictive confidentiality provisions, or fails to provide recourse to opt-in members who object to the proposed settlement. Elston, 2020 WL 6318660, at *5. Courts typically apply a less stringent standard when deciding whether to grant preliminary approval of the proposed settlement. Freebird, Inc. v. Merit Energy Co., No. 10-1154-KHV, 2012 WL 6085135, at *5 (D. Kan. Dec. 6, 2012). The Court will ordinarily grant preliminary approval where the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments

of the class and falls within the range of possible approval." Id. (quotations and citations omitted).

Experienced class action counsel represent the parties and they actively engaged in discovery, as well as mediation.[1]  The record reveals no evidence of collusion.  The parties negotiated the final settlement at arm's length for approximately four months, and it appears the parties fairly and honestly negotiated the proposed settlement.

The parties substantially disagree about the merit of plaintiff's case.  Defendant raised several arguments that if successful, would have resulted in the collective recovering nothing.  The parties have shown that serious questions of law and fact place the ultimate outcome of the litigation in doubt.

The parties have established that the value of an immediate recovery outweighs the possibility of future relief after protracted and expensive litigation.  Under the proposed agreement, defendant agrees to pay a gross settlement of $250,000, which includes attorney fees of $100,000 and a service award of $8,000 to Oakleaf.  The settlement provides plaintiff and each putative collective member a proportional recovery of damages for unpaid wages, without any differential treatment (aside from plaintiff's service award).  Plaintiff and each collective member will receive a settlement award based solely on the amount of time they worked and their regular rates of pay. The settlement provides about 41 per cent of plaintiffs' two-year unliquidated damages, 28 per cent of their three-year unliquidated damages, or 14 per cent of their total potential three-year liquidated damages, before attorneys fees and expenses.  Under the settlement, 24 putative

---

[1]    That said, the Court would not expect plaintiff's counsel who has litigated "hundreds of wage and hour actions" to file two unsuccessful unopposed motions to approve the settlement agreement.  This case is not particularly complex and the FLSA law at issue is not novel or complex.  Any future motion to approve the settlement shall enumerate each FLSA case which counsel has litigated, the case number, court and date of filing.

collective members (26 per cent) will receive at least $2,000, 13 (14 per cent) will receive at least $3,000 and two individuals will receive more than $7,000. Upon approval of the settlement, the settlement administrator will mail checks to the collective members and none of the funds will revert to defendant.

The case settled during discovery, and further litigation would have entailed further discovery, motions and jury trial expenses. At trial, collective members could possibly have recovered more through liquidated damages under the FLSA. Even so, plaintiff's counsel have made the reasonable judgment that significant settlement payments now outweigh the chance to obtain more after a trial and possible appeal. See James v. Boyd Gaming Corp., No. 19-2260-DDC-ADM, 2022 WL 4482477, at *10 (D. Kan. Sept. 27, 2022) (immediate recovery outweighed mere possibility of future relief after protracted and expensive litigation). Further, after reviewing defendant's financials, plaintiff accepted defendant's position that a greater settlement amount would place defendant in financial jeopardy. Therefore, plaintiff agrees that a relatively modest recovery is justified by the substantial risk of trial and defendant's precarious finances. The direct mailing of checks with no claims process and the absence of any reversion of uncollected payments to defendant demonstrates a strong result for collective members. The parties agree that the settlement is fair and reasonable. On this record, the Court agrees that a gross settlement fund of $250,000 is fair and equitable.

The release in the parties' proposed opt-in form reads as follows: "I understand that, in exchange for this payment, all wage claims under federal or state law that I may have against SW Janitorial through the effective date of the settlement will be fully settled, and that I cannot bring any further claims." Notice And Claim Release Form at 21 (Doc. #37-1). This is overly broad since it releases "all wage claims" through the effective date of the settlement instead of the wage

claims at issue in this lawsuit, namely unpaid overtime for a specified period of time.  This release

is unfair to putative class members, who may have wage claims unrelated to this action.

### 3.      Reasonable Attorneys Fees

The FLSA requires that a settlement agreement includes an award of reasonable

attorneys fees and costs.  29 U.S.C. § 216(b).  Though the Court has discretion to determine the

amount and reasonableness of the fee, the FLSA fee award is mandatory.  Id.  For percentage of

the fund awards, the Court applies a hybrid approach, which combines the percentage of the fund

method with the specific factors traditionally used to calculate the lodestar.  Gottlieb v. Barry, 43

F.3d 474, 482–83 (10th Cir. 1994).  This method calls on the Court to calculate a lodestar amount,

which represents the number of hours reasonably spent multiplied by a reasonable hourly rate.

Foster v. Robert Brogden's Olathe Buick GMC, Inc., 17-2095-DDC-JPO, 2019 WL 6715470, at

*4 (D. Kan. Dec. 10, 2019).

The hybrid approach also requires the Court to consider the factors set out in Johnson v.

Georgia Highway Exp., Inc., 488 F.2d 714 (5th Cir. 1974).  See Gottlieb, 43 F.3d at 483.  Those

factors are (1) time and labor required; (2) novelty and difficulty of the questions presented in the

case; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment

by the attorneys due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or

contingent; (7) any time limitations imposed by the client or circumstances; (8) amount involved

and results obtained; (9) experience, reputation and ability of the attorneys; (10) undesirability of

the case; (11) nature and length of the professional relationship with the client; and (12) awards in

similar cases.  Johnson, 488 F.2d at 717–19.

Here, the proposed settlement agreement allocates $100,000—40 per cent of the gross

settlement amount—for attorney fees.  It also specifies that plaintiff's counsel will receive up to

$2,034.14 for litigation expenses. The settlement agreement is contingent upon the Court's approval and does not specify what happens if the Court declines to approve this request. When parties reach a settlement under which defendant agrees to not oppose attorneys fees that come from a common fund—which is the case here—the Court skeptically examines and analyzes the fee and cost proposal because defendant has no incentive to bargain for lower fees. Elston, 2020 WL 6318660, at *7; Hoffman v. Poulsen Pizza LLC, No. 15-2640-DDC, 2016 WL 2848919, at *4 (D. Kan. May 16, 2016).

To calculate the lodestar, the Court first determines the number of hours that plaintiff's counsel reasonably expended on the litigation. Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan., 157 F.3d 1243, 1249 (10th Cir. 1998). Counsel's work is considered reasonable if it is useful and of a type ordinarily necessary to secure the result obtained. Johnson v. City of Tulsa, Okla., 489 F.3d 1089, 1106–07 (10th Cir. 2007). In reviewing whether counsel's hours were necessary, the Court considers the following factors: (1) whether the tasks being billed would normally be billed to a paying client, (2) the number of hours spent on each task, (3) the complexity of the case, (4) the number of reasonable strategies pursued, (5) the responses necessitated by the maneuvering of the other side and (6) potential duplication of services by multiple lawyers. Robinson v. City of Edmond, 160 F.3d 1275, 1281 (10th Cir. 1998). When the Court uses the lodestar as a cross check of the reasonableness of the fee under the common fund approach, it need not exhaustively scrutinize the hours documented by counsel. Voulgaris v. Array Biopharma, Inc., 60 F.4th 1259, 1267 (10th Cir. 2023); Brown v. Phillips Petroleum Co., 838 F.2d 451, 456 (10th Cir. 1988) (in determining reasonable fees from common benefit fund, court need not use lodestar formulation when reasonable fee is derived by giving greater weight to other Johnson factors).

Plaintiff's counsel request fees for 162.7 hours which five attorneys spent investigating,

-12-

prosecuting, mediating and settling this case. They expect to work 40 additional hours, for a total of 202.7 hours. The fees amount to a blended hourly rate $614.63 ($493.34 per hour with the additional expected 40 hours included). Counsel state that their lodestar will result in a blended hourly rate within the acceptable range, but they do not perform a full lodestar analysis, provide reasonable rates for each attorney who worked on this case or reveal the total amount which each attorney worked. Absent a full lodestar analysis, the Court cannot ascertain the reasonableness of the requested fee award. For these reasons, the Court rejects the proposed fee award of $100,000. See Perry v. Kansas Star Casino, LLC, No. CV 24-1183-KHV, 2025 WL 2606586, at *5 (D. Kan. Sept. 9, 2025).

### C.  Service Award

The parties ask the Court to approve an $8,000 service award to Oakleaf as class representative. The Court examines any proposed service payment to determine whether it is fair and reasonable. See Enegren v. KC Lodge Ventures LLC, No. 17-2285-DDC, 2019 WL 5102177, at *7 (D. Kan. Oct. 11, 2019); Grove v. ZW Tech, Inc., No. 11-2445-KHV, 2012 WL 1789100, at *7 (D. Kan. May 17, 2012). The parties contend that Oakleaf took a risk by representing the class, actively participated and assisted plaintiff's counsel in all phases of this case and participated in settlement discussions. The parties do not provide the number of hours which Oakleaf spent or what risk he allegedly took. Without this information, the Court cannot evaluate whether the proposed service award is fair. The Court notes that in the past, it has found that $20 per hour is a reasonable incentive fee. See Elston, 2020 WL 6318660, at *11; Peterson v. Mortg. Sources, Corp., No. 08-2660-KHV, 2011 WL 3793963, at *8 (D. Kan. Aug. 25, 2011). Further, the proposed service award is disproportional to the expected settlement amounts for individual collective members; Oakleaf's proportional share of the settlement, for example, is only $134.02.

-13-

**IT IS THEREFORE ORDERED** that Plaintiff's Unopposed Motion For Order For Conditional Certification And Preliminary Approval Of Settlement Agreement (Doc. #37), filed June 22, 2026 **is SUSTAINED in part and OVERRULED in part.  The Court sustains plaintiff's request for preliminary collective action certification.  The Court overrules plaintiff's request for preliminary approval of the parties' collective action settlement.**  The Court reminds the parties that this case will proceed to trial on January 4, 2027.  The Court will not continue the trial in order for the parties to effectuate settlement.

Dated this 6th day of August, 2026 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge